1

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE DISTRICT OF ARIZONA**

8
    **SHELVIN PRASAD,**                    )
9                                          )
              **Petitioner,**              )
10                                         )
              **v.**                       )    **CIV 07-01624 PHX JWS (MEA)**
11                                         )
    **KATRINA S. KANE,**                   )    **REPORT AND RECOMMENDATION**
12                                         )
              **Respondent.**              )
13  _____ )

14  **TO THE HONORABLE JOHN W. SEDWICK:**

15          Mr. Shelvin Prasad ("Petitioner), who is currently

16  detained at the Eloy Detention Center in Eloy, Arizona, filed a

17  *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C.

18  § 2241 on August 23, 2007, seeking his release from detention.

19  Respondent filed a Response in Opposition to Petition for Writ

20  of Habeas Corpus (Docket No. 8) on November 15, 2007.

21  Petitioner filed a *pro se* reply to the response to the petition

22  on December 17, 2007.  See Docket No. 9.

23          **I.  Background**

24          Petitioner is a native and citizen of Fiji.  See

25  Response in Opposition to Petition for Writ of Habeas Corpus

26  ("Response"), Exh. 1.  On July 18, 1998, Petitioner was admitted

27  to the United States as a lawful permanent resident. Response,

28  Exh. 1 & Exh. 3.

1        On or about October 4, 2005, the Department of Homeland

2   Security ("DHS") initiated removal proceedings against

3   Petitioner by serving Petitioner with a Notice to Appear.  Id.,

4   Exh. 2 & Exh. 6.  The Notice to Appear alleged that, on May 17,

5   2004, Petitioner was convicted by the State of California on one

6   charge of receiving stolen property.  Id., Exh. 2.  The Notice

7   to Appear alleged Petitioner was removable because he was an

8   immigrant who had been convicted of an aggravated felony as that

9   term is defined by federal immigration statutes, i.e., a state

10  conviction for a theft or burglary offense for which the imposed

11  term of imprisonment was at least one year.  Id., Exh. 2.

12  Petitioner was taken into the custody of the DHS on October 4,

13  2005.  See Answer at 2.

14        The charge of removability based on Petitioner's 2004

15  theft conviction was withdrawn on November 15, 2005.  Id., Exh.

16  2 & Exh. 3.  On that same day, DHS alleged Petitioner was

17  removable pursuant to 8 U.S.C. § 1227(a)(2)(B)(i), because he

18  had been convicted of violating a state law or regulation

19  related to a controlled substance other than a single offense

20  involving the personal use of marijuana.  Id., Exh. 3.  The DHS

21  filed a Notice of Additional Charges alleging that, in May of

22  2004, Petitioner was convicted by the State of California on one

23  count of felony possession of methamphetamine and one

24  misdemeanor count of being under the influence of

25  methamphetamine.  Id., Exh. 5.

26        Petitioner, through counsel requested a hearing

27  regarding his continued detention without bond on or about

28  October 26, 2005.  Id., Exh. 7.  Petitioner also submitted a

1  second request for a bond hearing on November 23, 2005.  <u>Id.</u>,

2  Exh. 7.   On December 2, 2005, an Immigration Judge noted the

3  "request for custody hearing was withdrawn."  <u>Id.</u>, Exh. 8.

4        Petitioner appeared at a hearing before an Immigration

5  Judge on November 15, 2005.  <u>Id.</u>, Exh. 8.  Petitioner's case was

6  continued because his counsel did not appear.  <u>Id.</u>, Exh. 8.  On

7  or about December 7, 2005, Petitioner admitted the allegations

8  in the amended Notice to Appear regarding his citizenship and

9  denied the allegations of his 2004 drug convictions.  <u>Id.</u>, Exh.

10 9.   On or about January 24, 2006, at a hearing before an

11 Immigration Judge, Petitioner admitted the factual allegations

12 in the amended Notice to Appear regarding his 2004 drug

13 convictions.  <u>Id.</u>, Exh. 9.[1]  At that time, Petitioner conceded

14 his removability and the Immigration Judge ("IJ") sustained the

15 charges in the amended Notice to Appear.  <u>Id.</u>, Exh. 9.

16        Petitioner then filed applications for asylum and

17 withholding of removal.  <u>Id.</u>, Exh. 9.  In a decision issued May

18 2, 2006, the IJ denied Petitioner's applications for asylum and

19 withholding of removal, and ordered Petitioner be removed from

20 the United States to Fiji.  <u>Id.</u>, Exh. 10.

21

22

23        [1]  Respondent's Exhibit 5 indicates that, initially,
24 Petitioner pled guilty to both charges and that the imposition of his
   sentence was suspended and he was placed on three years of informal
25 probation and given "credit for time served: 80 actual, 40 conduct,
   totaling 120 days."  Petitioner alleges in his reply to the answer
26 that the 2004 drug convictions were vacated *nunc pro tunc* after the
   initiation of his removal proceedings, and that he entered a plea of
27 *nolo contendere* to a charge of possession of a controlled substance
   for which conviction he received a suspended sentence and unsupervised
28 probation.  <u>See</u> Docket No. 9.

1          Petitioner appealed the IJ's decision to the Board of

2  Immigration Appeals ("BIA").  Id., Exh. 11 & Exh. 12.  The BIA

3  dismissed the appeal on September 8, 2006.  Id., Exh. 13.[2]

4  Petitioner filed a petition for review in the Ninth Circuit

5  Court of Appeals on or about November 1, 2006.  Id., Exh. 16.

6  Petitioner also filed a motion in the Ninth Circuit to stay his

7  removal, which was granted on February 22, 2007.  Id., Exh. 17

8  & Ninth Circuit Court of Appeals Docket No. 06-75173.

9          Petitioner filed another appeal in the Ninth Circuit

10 Court of Appeals on January 29, 2007 (Ninth Circuit Docket No.

11 07-70372), which matter was consolidated with his initial appeal

12 on April 9, 2007.  The pleading before the Ninth Circuit, in

13 which matter Petitioner is represented by retained counsel, was

14 completed October 24, 2007.  See Ninth Circuit Docket No. 06-

15 75173.

16         On May 1, 2007, DHS notified Petitioner that his

17 custody status would be reviewed on May 16, 2007.  Id., Exh. 20.

18 On or about June 12, 2007, DHS issued a decision to continue

19 Petitioner's detention.  Id., Exh. 21.  The decision states:

20 "your criminal history shows that you have difficulty complying

21 with terms of supervised release and you may pose a flight

22 risk."  Id., Exh. 21.  The decision further states: "a travel

23 document is available for your return to Fiji pending the

24 outcome of your current appeal..."  Id., Exh. 21.

25

26

27

28         [2] On October 4, 2006, the BIA denied Petitioner's motion to
remand based on the state court's vacature of his convictions *nunc pro
tunc*.  See Answer, Exh.  15.

-4-

1        Petitioner filed his federal habeas action on August

2   23, 2007.   In his federal habeas action, Petitioner asserts he

3   has   been   detained   beyond   the   six-month   constitutionally-

4   permissible period pending his removal from the United States,

5   citing the United States Supreme Court's opinion in <u>Zadvydas v.</u>

6   <u>Davis</u>.   Petitioner has been detained since October 4, 2005,

7   i.e., as of April of 2008, for a period of approximately two

8   years and six months.

9        Respondent avers that "[t]he total time of petitioner's

10  detention, during proceedings, was eleven months..."   Docket No.

11  8 at 5.   Citing the date Petitioner's motion to stay his removal

12  was filed, Respondent avers Petitioner's order of removal was

13  stayed by the Ninth Circuit Court of Appeals on November 2,

14  2006.   Accordingly, she asserts, Petitioner's order of removal

15  has not become final and Petitioner's case does not fall under

16  the rubric of <u>Zadvydas</u>.   Respondent further contends there is a

17  reasonable likelihood of Petitioner's removal in the foreseeable

18  future and, therefore, that his constitutional rights are not

19  violated by his continued detention.   Docket No. 8 at 8.

20  Respondent also notes Petitioner is a criminal alien, although

21  she allows he is not a known national security risk.   <u>Id.</u>[3]

22

23
_____

24       [3] The affidavit regarding the likelihood that Petitioner is
    removable in the reasonably foreseeable states Petitioner was ordered
25  removable because he committed an aggravated felony and avers the
    government of Fiji would not issue a travel document for Petitioner
26  until the conclusion of his appeal.   Answer, Exh. 21. Petitioner's
    crimes were not classified as aggravated felonies and the charge that
27  he was removable based on an aggravated felony was withdrawn.   The
    statement in the affidavit that Fiji had not issued a travel document
28  contradicts the statement by the detention hearing officer that a
    travel document had been issued.

1          **II.  Jurisdiction**

2          This Court has jurisdiction over the amended section

3 2241 petition only, arguably, to consider the merits of

4 Petitioner's claim his continued detention violates his

5 constitutional rights.  See Arreola-Arreola v. Ashcroft, 383

6 F.3d 956, 964-65 (9th Cir. 2004); Moallin v. Cangemi, 427 F.

7 Supp. 2d 908, 920 (D. Minn. 2006).  The District Court does not

8 have jurisdiction to consider whether the IJ properly concluded

9 Petitioner's crimes constituted a legitimate basis for

10 removability and whether relief from removal is barred and,

11 accordingly, the propriety of the order of removal currently

12 under appeal to the Ninth Circuit.  See Real ID Act, Pub. L. No.

13 109-13, 119 Stat. 231 (May 11, 2005); Padilla v. Gonzales, 470

14 F.3d 1209, 1213 (7th Cir. 2006).

15          The plain language of the REAL ID Act grants

16 jurisdiction to appellate courts to review questions of law

17 presented in petitions for review of final orders of removal,

18 even those pertaining to otherwise discretionary determinations.

19 See Afridi v. Gonzales, 442 F.3d 1212, 1218 (9th Cir. 2006);

20 Cabrera-Alvarez v. Gonzales, 423 F.3d 1006, 1009 (9th Cir.

21 2005).  The Ninth Circuit Court of Appeals has concluded the

22 District Courts have jurisdiction to determine if a habeas

23 petitioner's continued discretionary detention violates federal

24 statutes or the detainee's constitutional rights.  See Nadarajah

25 v. Gonzalez, 443 F.3d 1069, 1075-76 (9th Cir. 2006).  The

26 undersigned notes that other federal courts have concluded they

27 may review the constitutionality of the detention but only to a

28 limited extent the breadth of the discretionary authority

1  conferred on the Department of Homeland Security to detain an

2  alien during the pendency of their removal proceedings.  After

3  a thorough discussion of the relevant federal court opinions,

4  the Western District of Texas concluded:

5          The Court therefore finds that it has
          jurisdiction to consider a constitutional
6          challenge to section 1226(a) *and the extent
          of the Attorney General's authority under*
7          *section 1226(a)*.  However, under section
          1226(e) and the Fifth Circuit's decision in
8          Loa-Herrera,  as  well  as  section
          1252(a)(2)(B)(ii), the Court finds that it
9          *does not have jurisdiction to review the*
          *decision to deny release on bond itself or*
10         *the Attorney General's discretionary judgment*
          *regarding the application of 1226(a),*
11         "*including the manner in which that*
          *discretionary judgment is exercised, and*
12         *whether the procedural apparatus supplied*
          *satisfies regulatory, statutory, and*
13         *constitutional constraints.*"    Loa-Herrera,
          231 F.3d at 991.

14

15 Kambo v. Poppell, 2007 WL 3051601, at *10 (W.D. Tex.), comparing

16 Sierra v. INS, 258 F.3d 1213, 1217 (10th Cir. 2001) (holding

17 that  §  1252(a)(2)(B)(ii)  did  not  bar  challenge  to  the

18 constitutionality of the procedures used in alien's parole

19 proceeding because it is never within the Attorney General's

20 discretion to act unconstitutionally).[4]    Nonetheless, the

21

22         4

          Certainly, the Court has no jurisdiction to
23         review DHS's decision to retain custody of Kambo
          without bond on the merits.  Under section
24         1226(a), the Attorney General has broad
          discretion to detain an alien. Section 1226(a)
25         provides that "an alien may be arrested and
          detained pending a decision on whether the alien
26         is to be removed from the United States." The use
          of the term "may" indicates discretion. There are
27         no limitations on or standards for exercising
          that discretion in the statute. Further,
28         "[e]xcept as provided in subsection (c)," which
          is not applicable here, "pending such decision

-7-

1  undersigned notes that at least one federal court has concluded

2  that the District Courts do not, as a matter of federal

3  statutes, i.e., 8 U.S.C. 1252, have the power to review

4  Respondents' discretionary power to detain Petitioner during the

5  pendency of his removal proceedings as a flight risk.  See Sai

6  Zhao Jiang v. Chertoff, 2008 WL 80582, at *8 (D. Minn. 2008).

7  **III.  Analysis**

8  This Court may issue a writ of habeas corpus to a

9  Department of Homeland Security detainee who is "in custody in

10 violation of the Constitution or laws or treaties of the United

11 States."  28 U.S.C. § 2241(c)(3) (2006 & Supp. 2007).  Federal

12 law provides for the detention of removable aliens in two

13 separate circumstances.  Section 236(c) of the Immigration and

14 Nationality Act ("INA"), codified at 8 U.S.C. § 1226, governs

15 the detention of aliens who are not under an administratively

16 final order of removal.  Section 231 of the INA, codified at 8

17 U.S.C. § 1231, governs the detention of aliens whose order of

18 removal is administratively final.

19 Federal law provides: "Except as otherwise provided in

20 this section, when an alien is ordered removed, the Attorney

21 General shall remove the alien from the United States within a

22

23 [on whether the alien is to be removed], the
   Attorney General may continue to detain the
24 arrested alien." 8 U.S.C. § 1226(a). Again, *there
   are no express limitations on or standards for*
25 *the Attorney General's exercise of discretion to*
   *continue to detain the alien*. Further, under
26 section 1226(e), no court may review the Attorney
   General's "discretionary judgment regarding the
27 application of this section" or "set aside any
   action or decision by the Attorney General under
28 this section regarding the detention ... of any
   alien or ... denial of bond." 8 U.S.C. § 1226(e).

-8-

1 period of 90 days (in this section referred to as the 'removal

2 period')."   8 U.S.C. § 1231(a)(1)(A) (2005 & Supp. 2007).   In

3 Zadvydas v. Davis, the United States Supreme Court held section

4 1231 could not be read to authorize the potentially indefinite

5 detention of a removable alien.  The court concluded due process

6 concerns were implicated by the detention of an alien, pending

7 their removal from the United States, for more than six months

8 after their order of removal is final.  See 533 U.S. 678, 121 S.

9 Ct. 2491 (2001).[5]

10       However,    the    statutory    ninety    day    limit    for

11 effectuating removal  is  not  applicable  until  the  "removal

12 period" begins.  See, e.g., Kothandaraghipathy v. Department of

13 Homeland Sec., 396 F. Supp. 2d 1104, 1107 (D. Ariz. 2005).

14 Ordinarily the "removal period" begins on "[t]he date the order

15 of  removal  becomes  administratively  final."    8  U.S.C.  §

16 1231(a)(1)(B)(i) (2005 & Supp. 2007).   However, if the alien

17 files an appeal and the Circuit Court of Appeals orders a stay

18 of  removal,  the  removal  period  begins  on  "the  date  of  the

19 court's final order."  Id. § 1231(a)(1)(B)(ii).  See also Tijani

20 v. Willis, 430 F.3d 1241, 1248 n.7 (9th Cir. 2005); Balogun v.

21 INS, 9 F.3d 347, 350-51 (5th Cir. 1993); Kothandaraghipathy, 396

22 F. Supp. 2d at 1107.

25       [5]   The Ninth Circuit Court of Appeals has interpreted the
26 "six month" limit to be a total of six months from the date the order
of removal becomes final, rather than six months from the expiration
27 of the removal period.  See Khotesouvan v. Morones, 386 F.3d 1298,
1300 (9th Cir. 2004); Kim Ho Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5
28 (9th Cir. 2001); accord Akinwale v. Ashcroft, 287 F.3d 1050, 1052
(11th Cir. 2002).

1        The BIA dismissed Petitioner's appeal of his order of
2   removal and the denial of relief from removability on September
3   8, 2006.   The order of removal became "administratively final"
4   on   that   date.      However,   approximately   two   months   later
5   Petitioner filed a petition for review of the order of removal
6   in    the    Ninth    Circuit    Court    of    Appeals.      Petitioner
7   simultaneously filed a motion to stay his removal, which was
8   granted by the Ninth Circuit on February 22, 2007.[6]   Pursuant
9   to the governing law, even though Petitioner's order of removal
10  might once have been "administratively final," upon the BIA's
11  dismissal of Petitioner's appeal, the "removal period" specified
12  in section 1231 has not yet begun because the Court of Appeals
13  has not issued a "final order" with regard to Petitioner's order
14  of removal.   In other words, any "finality" bestowed by the
15  BIA's decision was eradicated when Petitioner sought review of
16  the decision by the Ninth Circuit.

17        Petitioner asserts the order of removal became "final"
18  when   the   BIA   issued   its   decision   dismissing   his   appeal.
19  Petitioner contends that the Ninth Circuit's granting of his
20  motion   to   stay   only   stayed   the   execution   of   the   order   of
21  removal, and not the onset of the removal period.   Docket No. 9
22  at 5.   As stated supra, although Petitioner is technically
23  correct   in   stating   that   the   order   of   removal   was
24  administratively final when the BIA issued its decision, as a

25  ────────────────────

26        [6] A stay of removal is not automatic, but is granted only
    if the petitioner shows either the probability of success on the
27  merits and the possibility of irreparable injury, or that serious
    legal questions are raised and the balance of hardships tips sharply
28  in the petitioner's favor.   See Andreiu v. Ashcroft, 253 F.3d 477,
    484-484 (9th Cir. 2001)(en banc).

-10-

function of law the "removal period" regarding his order of removal will not begin until the Ninth Circuit issues its decision.  See Kim Ho Ma v. Ashcroft, 257 F.3d 1095, 1104 n.12 (9th Cir. 2001) ("[i]f the removal order is stayed pending judicial review, the ninety day period begins running after the reviewing court's final order."); Bah v. Cangemi, 489 F. Supp. 2d 905, 917-18 (D. Minn. 2007).

Because the "removal period" does not commence until after the appellate court has concluded its review of a challenged order of removal, prior to that time the alien's detention is pursuant to section 1236 rather than section 1231. See Martinez-Jaramillo v. Thompson, 120 Fed. App. 714, 717 (9th Cir. 2005) (holding that where a stay of removal is granted pending judicial review, INA section 236 provides the statutory basis for detention); Martinez v. Gonzales, 504 F. Supp. 2d 887, 893 (C.D. Cal. 2007); Quezada-Bucio v. Ridge, 317 F. Supp. 2d 1221, 1224 (W.D. Wash. 2004) ("Because Petitioner's removal order has been stayed by the Ninth Circuit pending its review of the BIA decision, the 'removal period' has not yet commenced, and Petitioner therefore is detained pursuant to INA § 236.").[7]

---

[7] To avoid confusion as to how, or whether, to classify the interval between the issuance of a BIA decision and the date an appellate court stays removal as part of the "removal period," some federal courts have concluded that the ninety-day removal period is "tolled" during the time the alien's removal is stayed by a Circuit Court of Appeal, as compared to reasoning that the removal period does not begin until the Circuit Court of Appeal has finished its review. See, e.g., Akinwale v. Ashcroft, 287 F.3d 1050, 1052 n.4 (11th Cir. 2002); Aghahowa v. Attorney General, 2008 WL 189566, at *3 (E.D. Pa. 2008); Riley v. Greene, 149 F. Supp. 2d 1256, 1261 (D. Colo. 2001) ("At least two federal circuit courts and several district courts have found that if an alien contributes to the delay of his departure he is not allowed the benefit of a release pending his actual removal, and the six-month period to effect an alien's departure is tolled.").

1          Accordingly, the issue before the Court is whether

2   Petitioner's continued detention violates section 1226 or his

3   constitutional rights.     If his continued detention is not

4   authorized by section 1226, he is entitled to a writ of habeas

5   corpus.     Alternatively, if his detention violates his

6   constitutional right to substantive or procedural due process,

7   the writ may issue.

8          **A. Petitioner's detention is not authorized by section**

9   **1226**

10          Petitioner has now been detained for a period of two

11  years and six months and his detention is not required by

12  section 1226(c) because the basis of his removability is not one

13  stated in that section.    One year of that detention occurred

14  while Petitioner's removal proceedings were before the agency

15  and approximately one year and six months of that detention have

16  occurred while Petitioner's action before the Ninth Circuit has

17  been pending.

18          The appropriate analysis to utilize when determining

19  whether his continued detention violates the authority conferred

20  by federal statutes is not completely clear.[8]   The published and

21  unpublished federal Circuit Courts of Appeal opinions which

22

23

The undersigned notes the precedential effect of <u>Akinwale</u> is
24  undermined because the statement in <u>Akinwale</u> was in dicta in a
footnote.   <u>See</u> <u>Martinez v. Gonzales</u>, 504 F. Supp. 2d 887, 898 (C.D.
25  Cal. 2007).   <u>See</u> <u>also</u> <u>Bah v. Cangemi</u>, 489 F. Supp. 2d 905, 918 (D.
Minn. 2007).

26
        [8] Some issues implicated by Petitioner's detention were
27  presented to the Ninth Circuit Court of Appeals in <u>Prieto Romero v.</u>
<u>Gonzales</u>, Ninth Circuit Docket No. 07-35458, a case arising in the
28  Western District of Washington, which was consolidated with other
cases.

address whether an alien's detention during the pendency of their removal proceedings violates federal statutes or their constitutional rights generally arise in the context the mandatory detention provisions of section 1226(c), which provide for the mandatory detention of certain classes of aliens, rather than section 1226(a), governing the discretionary detention of all other aliens, including Petitioner.  <u>See</u>, <u>e.g.</u>, <u>Demore v. Kim</u> 538 U.S. 510, 527-29, 123 S. Ct. 1708, 1719-21 (2003) (concluding the alien's detention was "reasonably related" to the goal of preventing flight, both because the alien was unquestionably removable, and thus presented a high flight risk, and because the time period for the average removal was brief); <u>Tijani</u>, 430 F.3d at 1249-50; <u>Hoang Mingh Ly v. Hansen</u>, 351 F.3d 263, 273 (6th Cir. 2003) (concluding an alien's continued detention for one and a half years during pre-removal proceedings violated their right to substantive due process because the detention was unreasonable);[9] <u>Martinez</u>, 504 F. Supp.

---

[9] The Sixth Circuit affirmed the award of habeas relief because there was no strong special justification for detaining the petitioner, and because the period of time required to conclude the petitioner's removal proceedings was unreasonable, and because actual removal was not reasonably foreseeable because there was no repatriation agreement with the petitioner's home country.

> by construing the pre-removal detention statute to include an implicit requirement that removal proceedings be concluded within a reasonable time, we avoid the need to mandate the procedural protections that would be required to detain deportable aliens indefinitely. Although we affirm the grant of habeas corpus and the district court's finding that incarceration for 18 months pending removal proceedings is unreasonable, we do not require the United States to hold bond hearings for every criminal alien detained under § 236. *Ly's case is not the norm, in that he is not actually removable*. In the majority of cases, where an order of removal is

-13-

1  2d at 895; <u>Bah</u>, 489 F. Supp. 2d at 915.

2      In a published decision, the Ninth Circuit Court of
3  Appeals held an alien who had been confined for five years, who
4  had "not been charged with any crime, and who ha[d] won relief
5  at every administrative level, [wa]s unreasonable under the
6  standards set forth by the Supreme Court." <u>Nadarajah</u>, 443 F.3d
7  at 1081.   The Ninth Circuit Court of Appeals concluded, in
8  somewhat dissimilar circumstances, that when an alien had been
9  detained pursuant to section 1226 for an unreasonable period of
10 time, and their removal was unforeseeable, the government's
11 continued detention of the alien violated federal law and they
12 were entitled to a writ of habeas corpus. <u>See</u> <u>id.</u>, 443 F.3d at
13 1082 (holding the DHS had improperly denied parole on bond and
14 ordering the petitioner's release, pursuant to their authority
15 under the Federal Rules of Appellate Procedure, *inter alia*,
16 because the IJ had granted relief from removal and so removal
17 was not foreseeable).

18     In other cases judges of the District of Arizona have
19 concluded detention for a time period of two years was not
20 unreasonable. <u>See</u> <u>Mboussi-Ona v. Crawford</u>, 2007 WL 3026946, at
21 *3 (NVW BPV) (rejecting the Magistrate Judge's recommendation
22 that relief be granted pursuant to <u>Tijani</u> and concluding the
23 alien's section 1226(c) detention was not indefinite and did not

24

25          promptly entered and removal is effected within
            the time allotted under <u>Zadvydas</u>, bond hearings
26          are not required. As <u>Zadvydas</u> made clear, the
            liberty interest of deportable criminal aliens is
27          adequately    served    by   the   reasonableness
            limitation on the period of incarceration
28 <u>Hoang Mingh Ly v. Hansen</u>, 351 F.3d 263, 270 (6th Cir. 2003) (emphasis
   added).

-14-

1 violate his constitutional rights because he would either be

2 granted relief from removal and released or removed to

3 Cameroon); <u>Ibeaqwa v. Crawford</u>, 2007 WL 2702006, at *2-*3 & n.2

4 (SRB BPV) (noting that, but for the petitioner's decision to

5 file a judicial appeal, he would no longer be in detention);

6 <u>Passano v. Gonzalez</u>, 2007 WL 1577908, at *1 & *3 (JWS DKD)

7 (declining to apply <u>Tijani</u> in a case where detention was not

8 mandatory and alien had been detained for two years, because the

9 majority of the alien's detention occurred during his judicial

10 appeal, wherein the administrative process was concluded in six

11 months, the alien conceded removability, and there was no

12 indication that the country of nationality would not accept the

13 petitioner).  <u>But</u> <u>see</u> <u>Lawson v. Gerlinski</u>, 332 F. Supp. 2d 735,

14 745 (M.D. Pa. 2004).

15    **B.    Petitioner's constitutional rights were not**

16 **violated**

17    Other federal courts which have considered similar

18 cases have granted habeas relief when the petitioner could

19 establish their removal was not likely in the reasonably

20 foreseeable future, holding that potentially indefinite

21 detention violates the petitioner's right to substantive due

22 process.

23    Petitioner has a Fifth Amendment liberty interest which

24 is violated by detention which is potentially indefinite.

25    The remaining question is whether petitioner
   has "provid[ed] good reason to believe that
26    there is no significant likelihood of removal
   in the reasonably foreseeable future," making
27    his continued detention "reasonably necessary
   to bring about" his removal. If so, the
28    government must respond with evidence

-15-

1    sufficient to rebut that showing....

2 <u>Martinez</u>, 504 F. Supp. 2d at 899.  <u>See</u> <u>also</u> <u>Hoang Minh Ly</u>, 351

3 F.3d at 271-72 (affirming the grant of habeas relief because

4 there was no reasonable likelihood of removal in the reasonably

5 foreseeable future even if removal proceedings concluded with

6 affirmation of the order of removal).

7    A finding that Petitioner's removal is not "reasonably

8 foreseeable," either because he is likely to win his appeal or

9 because there is an institutional barrier to his ultimate

10 removal, would negate the contention that his continued

11 detention was reasonably necessary to ensure his removal.  The

12 undersigned cannot conclude Petitioner's removal is not

13 reasonably foreseeable.  There is no reason to believe the Ninth

14 Circuit will not affirm the order of removal and denial of

15 relief from removability in the foreseeable future.  Although

16 Petitioner contests his eligibility for relief from removal,

17 both the IJ and the BIA found him removable and ineligible for

18 relief from removal, distinguishing Petitioner's situation from

19 the petition in <u>Nadarajah</u>.  Additionally, there is no reason to

20 believe that Fiji will refuse to repatriate Petitioner, as

21 compared to the petitioner in <u>Hoang Minh Ly</u> wherein there was no

22 repatriation agreement in place with the designated country of

23 removal, Vietnam.

24

25    **IT IS THEREFORE RECOMMENDED** that Mr. Prasad's Petition

26 for Writ of Habeas Corpus be **denied**.

27

28

1    This recommendation is not an order that is immediately
2 appealable to the Ninth Circuit Court of Appeals.  Any notice of
3 appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate
4 Procedure, should not be filed until entry of the district
5 court's judgment.

6    Pursuant to Rule 72(b), Federal Rules of Civil
7 Procedure, the parties shall have ten (10) days from the date of
8 service of a copy of this recommendation within which to file
9 specific written objections with the Court.  Thereafter, the
10 parties have ten (10) days within which to file a response to
11 the objections.  Failure to timely file objections to any
12 factual or legal determinations of the Magistrate Judge will be
13 considered a waiver of a party's right to de novo appellate
14 consideration of the issues.  See United States v. Reyna-Tapia,
15 328 F.3d 1114, 1121 (9th Cir.) (en banc), cert. denied, 540 U.S.
16 900 (2003).  Failure to timely file objections to any factual or
17 legal determinations of the Magistrate Judge will constitute a
18 waiver of a party's right to appellate review of the findings of
19 fact and conclusions of law in an order or judgment entered
20 pursuant to the recommendation of the Magistrate Judge.

21
22    DATED this 15th day of April, 2008.
23
24
25
26    _____
      Mark E. Aspey
27    United States Magistrate Judge
28

-17-